IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

CHRISTOPHER KING,

                Plaintiff,                OPINION AND ORDER

v.

                                            19-cv-63-wmc

STATE OF WISCONSIN, et al.,

                Defendants.

In this lawsuit, plaintiff Christopher King alleges broadly that the state Office of Lawyer Regulation ("OLR") and others conspired with mortgage lenders or servicers to fabricate documents for the purpose of foreclosing on homeowners. King further claims that defendants violated his state and federal constitutional rights when he attempted to investigate and document this conspiracy. The issues before the court are (1) whether the case was properly removed (dkt. #19) and (2) whether King's claims should be dismissed (dkts. #2-5, 22, 30). Ultimately, the court concludes that removal was proper and that King's suit against all defendants is barred by various jurisdictional and procedural doctrines and must be dismissed.[1]

BACKGROUND AND ALLEGATIONS OF FACT[2]

This suit is one of a trio of cases originally brought as a single lawsuit in state court

---

[1] Also pending before the court are two motions to strike filed by the Litchfield defendants. (Dkts. #46, 59.) Because the court is dismissing this case in its entirety, these motions will be denied as moot.

[2] The allegations of fact proffered in plaintiff's complaint are taken as true for the purpose of deciding defendants' various motions to dismiss, with all plausible inferences drawn in plaintiff's favor. *See Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013).

by three plaintiffs: Christopher King (the plaintiff in the instant case), Wendy Alison Nora, and Roger Rinaldi. The case was removed to federal court and was initially assigned to me. In an abundance of caution over asserted conflicts, the court subsequently severed each of the three plaintiffs' claims into separate cases, and assigned Nora's and Rinaldi's cases (Nos. 19-cv-62 & 19-cv-3) to Judge James Peterson. On August 13, 2019, Judge Peterson dismissed Rinaldi's case on the basis that he did not bring any plausible claims for relief. And on November 12, 2019, Nora's case was remanded by stipulation back to state court for resolution. As a result, only King's portion of the claims is still before me, although the first amended complaint remains the "operative pleading"[3] and names fifteen defendants, who are broken up into the following groups:

- Mark Rattan, Stephanie Dykeman, and Litchfield Cavo, LLP ("the Litchfield defendants");

- The OLR, the state of Wisconsin, the Wisconsin Supreme Court, Chief Justice Patience Roggensack, Attorney General Brad Schimel, Keith Sellen, Travis Stieren, Robert Kasieta, Theron Edward Parsons IV, Edward Hannan, and James Winiarski ("the State defendants"); and

- Wells Fargo Bank, NA ("Wells Fargo").

(*See* First Amended Complaint (hereinafter "FAC") (dkt. #2-2) 11-15.)

In a nutshell, the complaint alleges Nora and Rinaldi provided the OLR with evidence that members of the Wisconsin bar were engaged in a conspiracy to fabricate false documents, which were then used to foreclose on homes in Wisconsin, including Rinaldi's

---

[3] On February 19, 2019, plaintiff filed a motion for leave to file an amended complaint. (Dkt. #49.) The court granted in part and denied in part plaintiff's motion, explaining: "Plaintiff need not file an additional amended complaint because the first amended complaint -- the operative pleading -- shall be deemed to seek declaratory and prospective relief. The motion is denied in all other respects for the same reason set forth in the court's previous order (dkt. #18)." (Dkt. #50.)

2

own home. At the time, Nora was still a licensed, practicing attorney and had represented Rinaldi and others in foreclosure proceedings. Rather than investigating this alleged wrongdoing by other attorneys, however, King claims that the OLR initiated disciplinary proceedings against Nora. In particular, the OLR conducted a disciplinary hearing against Nora on March 23, 2017.

The complaint explains that plaintiff "King, a journalist and videographer," attended the disciplinary hearing "for the purpose of making a visual record." (*Id.* ¶ 114.) Nevertheless, at the hearing, attorney Mark Rattan allegedly "physically assaulted" King to prevent him from recording the proceedings. (*Id.* ¶ 116.) According to King, James Winiarski -- the referee over the hearing -- did "not even admonish Rattan" for the assault, but "instead expressed his own discomfort with the presence of King, in the capacity of what he himself characterized as 'the press.'" (*Id.* ¶ 118.) Worse, the next day, after "express[ing] his intention to lodge a complaint for violation of his rights," King was further removed by Referee Winiarski from even being present at the ongoing proceedings. (*Id.* ¶ 119.) King also complains that Keith Sellen, the Director of OLR, abused his discretion in responding to King's grievance against attorney Rattan by only requiring that Rattan complete a diversion program, the outcome of which "was likely to be no more severe than a private reprimand." (*Id.* ¶¶ 158-60.)

Based on these allegations, King claims that the Wisconsin Lawyer Regulation System ("LRS") is unconstitutional on its face and "as applied." He also claims that defendants' conduct during and related to Nora's disciplinary hearing violated a variety of his state and federal constitutional rights. To remedy these violations, King seeks damages,

3

injunctive relief, and declaratory relief.[4]

OPINION

I. **Removal**

The initial complaint was filed in state court on April 9, 2018. Then, on October 9, 2018, a first amended complaint was filed, which added for the first time the Litchfield defendants. Service of process on the Litchfield defendants was at least attempted, if not accomplished, on December 9 and 10, 2018. Subsequently, the Litchfield defendants filed a notice of removal to federal court on January 2, 2019, in which all other defendants joined.

Under 28 U.S.C. § 1446(b)(2)(B), a defendant has 30 days from receipt or service of an "initial pleading or summons" to file a notice of removal. Here, the Lichfield defendants were not named in the initial complaint, and service as to those defendants was not accomplished until December 9, and 10, 2018. So the January 2, 2019, notice of removal was timely served as to the then only recently named Litchfield defendants, but untimely as to the defendants originally named in and served with the initial complaint.

In its January 18, 2019, conference with the parties, the court requested briefing as to whether the thirty-day deadline for removal runs from the last defendant receiving or being served with the complaint. (Dkt. #18.) Having now reviewed that briefing (*see* dkts. #19, 38), the court is satisfied that removal was proper and timely. *See Knudsen v. Liberty*

---

[4] Although the complaint refers frequently to an alleged "RICO/WOCCA enterprise," the plaintiffs expressly sought to "reserve their pleading of [Racketeer Influenced and Corrupt Organizations Act ("RICO")]/[Wisconsin Organized Crime Control Act ("WOCCA")] damages claims." (*Id.* ¶ 36.)

*Mut. Ins. Co.*, 411 F.3d 805, 807 (7th Cir. 2005) ("[A]n amendment to the pleadings that . . . adds a new defendant, opens a new window of removal."). This holding mirrors Judge Peterson's decision as to the same issue in the related *Rinaldi* case. *See Rinaldi v. State of Wisconsin*, No. 19-cv-3, *3-4 (W.D. Wis. Aug. 13, 2019).

## II. Motions to Dismiss

Also before the court are three motions to dismiss by the defendants in this case. The Litchfield defendants argue that (1) the second amended summons was fundamentally defective and, therefore, fatal to jurisdiction; and (2) defendant Dykeman was not properly served and should be dismissed from the case. (Litchfield Defs.' Br. (dkt. #2-5) 1.) Wells Fargo also argues that the second amended summons was fundamentally defective, and it further contends that the complaint fails to state a claim upon which relief can be granted. (Wells Fargo Br. (dkt. #23) 1.) Finally, the State defendants advance a number of arguments, including lack of personal jurisdiction, various immunity defenses, failure to serve a written notice of claims, and failure to state a claim upon which relief can be granted. (State Defs.' Br. (dkt. #31) 4.) The court will first consider the arguments made by the Litchfield defendants and Wells Fargo, and will then turn to the arguments advanced by the State defendants.

### A. Litchfield Defendants and Wells Fargo

#### 1. Defective Summons

Both the Litchfield defendants and Wells Fargo argue that this court lacks jurisdiction over them because the only summons served on them -- the second amended

summons -- was fundamentally defective.  (Litchfield Defs.' Br. (dkt. #2-5); Wells Fargo Br. (dkt. #23).)[5]  "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."  *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987).  "This right is not waived by filing a petition for removal to federal court."  *Silva v. City of Madison*, 69 F.3d 1368, 1376 (7th Cir. 1995).  Where, as here, a party challenges service that was attempted before removal, "federal courts in removed cases look to the law of the forum state . . . to determine whether service of process was perfected prior to removal."  *Wallace v. Microsoft Corp.*, 596 F.3d 703, 706 (10th Cir. 2010); *see also Freight Terminals, Inc. v. Ryder Sys., Inc.*, 461 F.2d 1046, 1052 (5th Cir. 1972) ("[T]he district court must look to state law to ascertain whether service was properly made prior to removal.").  Accordingly, the Litchfield defendants and Wells Fargo argue that the second amended summons was defective under Wisconsin law because it did not adequately specify the time frame within which they were required to file a responsive pleading.  (Litchfield Defs.' Br. (dkt. #2-5); Wells Fargo Br. (dkt. #23).)

In determining whether service of summons was properly satisfied, Wisconsin courts distinguish between "fundamental" and "technical" defects.  *Am. Family Mut. Ins. Co. v. Royal Ins. Co. of Am.*, 167 Wis. 2d 524, 533, 481 N.W.2d 629 (1992).  "[W]here the

---

[5] The summons served to the State defendants also appears to contain the same alleged defect; however, they do not raise this argument in their brief and accordingly waive the challenge.  *See O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1399 (7th Cir. 1993) ("Pursuant to Rule 12(h)(1), a party must include a defense of insufficiency of process in its first Rule 12 motion or the defense is waived.").  Moreover, there is some authority indicating that the court may not raise this issue on its own initiative.  *See Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351 (11th Cir. 2008); *Chute v. Walker*, 281 F.3d 314, 315-16 (1st Cir. 2002).

defect is technical, the court has personal jurisdiction only if the complainant can show the defendant was not prejudiced," but "where the defect is fundamental, no personal jurisdiction attaches regardless of prejudice or lack thereof." *Id.* Regardless, the "complainant has the burden to prove that there was no defect in the summons, or if there was a defect, that it was technical and not fundamental, and did not prejudice the defendant." *Burnett v. Hill*, 207 Wis. 2d 110, 118, 557 N.W.2d 800, 803 (1997).

"Substantial compliance" with service requirements alone does not determine whether a defect is technical or fundamental. *Am. Family*, 167 Wis. 2d at 533. However, if a pleading or summons contains a defect, but "nevertheless comports with the purpose and nature of a statute, the defect is generally technical." *Schaefer v. Riegelman*, 2002 WI 18, ¶ 29, 250 Wis. 2d 494, 639 N.W.2d 715. For example, a mistyped file number on a complaint amounts to no more than a technical defect, because the primary purpose of service is to give notice to the defendant that an action has been commenced. *See, e.g., Schlumpf v. Yellick*, 94 Wis.2d 504, 288 N.W.2d 834 (1980). In contrast, where the defendant is served in Wisconsin by a non-resident of Wisconsin, that defect is fundamental, because the statute expressly requires that the summons be served by an adult resident of the state where service is made. *See, e.g., Bendimez v. Neidermire*, 222 Wis.2d 356, 588 N.W.2d 55 (Ct. App. 1998). Similarly, where the summons and complaint are signed by an attorney not licensed to practice in Wisconsin, on behalf of a Wisconsin-barred lawyer, such a defect is fundamental, because it does not comport with the purpose of the subscription requirement, which is that the lawyer guarantees the validity of the claims. *Schaefer*, 2002 WI ¶ 30.

Here, the applicable portion of the Wisconsin statute specifies that:

The summons shall contain:
> . . .
> (2) A direction to the defendant . . . to serve the answer or demand for a copy of the complaint within the following periods:
> (a)
> 1. Except as provided in subds. 2. and 3., within 20 days, exclusive of the day of service, after the summons has been served personally upon the defendant or served by substitution personally upon another authorized to accept service of the summons for the defendant.
> 2. If the defendant is the state or an officer, agent, employee, or agency of the state, as to that defendant, within 45 days, exclusive of the day of service, after the summons has been served personally upon the defendant or served by substitution personally upon another authorized to accept service of the summons for the defendant.
> 3. Within 45 days, exclusive of the day of service, after the summons has been served personally upon the defendant or served by substitution personally upon another authorized to accept service of the summons for the defendant, if any of the following applies:
>    a. A defendant in the action is an insurance company.
>    b. Any cause of action raised in the complaint is founded in tort.
> (b) Within 40 days after a date stated in the summons, exclusive of such date, if no such personal or substituted personal service has been made, and service is made by publication. The date so stated in the summons shall be the date of the first required publication.

Wis. Stat. § 801.09(2).

The second amended summons served on the Litchfield defendants and Wells Fargo provides:

> Within twenty (20) days of receiving this or forty-five (45) days of the date of receipt of the Summons if you are a Defendant in a tort claim for fraud or personal injury, you must respond with a written answer, as that term is used in chapter 802 of the Wisconsin Statutes, to the Complaint. . . .
> If you do not provide a proper answer within twenty (20) or forty-five (45) days, as applicable, the court may grant

8

judgment against you . . . .

(Sec. Am. Summons (dkt. #2-2) 7.) Accordingly, defendants argue that the summons was defective (1) because it did not specify whether the response period was 20 days or 45 days, requiring them to "figure out for themselves" which period was applicable; and (2) because it did not accurately summarize the law as to the response deadline.

While the court does not necessarily agree that plaintiff was required to specify which of the two response periods was applicable to them, it need not reach this question because plaintiff King did not accurately summarize the law as to the response periods and that defect was fundamental. King wrote that the 45 day period was applicable to defendants "in a tort claim for fraud or personal injury." But the 45 day period would have also been applicable to defendants in a property tort claim, if the defendant was an insurance company, or under various other conditions specified in the statute. *See* Wis. Stat. § 801.09(2). This defect was fundamental as it does not comport with the "purpose and nature" of the requirement set forth in Wis. Stat. § 801.09(2) -- to provide the defendant with "a direction" as to when it must respond to the complaint consistent with the times specified by statute.

In response, King does not dispute that this defect was fundamental under the statute, but rather that defendants were not prejudiced by the summons. (Pl.'s Opp'n (dkt. #33) 1-3.) As previously noted, however, the Wisconsin Supreme Court has "stressed that the complainant cannot prove a defect was not fundamental by showing the defendant was not prejudiced by complainant's error." *Am. Family*, 167 Wis. 2d at 534. Having found the defect fundamental, therefore, prejudice is entirely beside the point under Wisconsin

9

law, and the court still lacks personal jurisdiction over the Litchfield defendants and defendant Wells Fargo.

Nevertheless, this holding does not by itself compel the court to dismiss the case against the Litchfield defendants and Wells Fargo. *See* Fed. R. Civ. P. 4(a)(2) ("The court may permit a summons to be amended."); *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011) (court has discretion to give plaintiff an extension to perfect service). Given that these defendants have neither claimed nor appeared to have suffered an apparent prejudice as a result of the service defect -- having discerned the appropriate response period and responded in a timely fashion -- there would appear little reason to allow plaintiff an opportunity to perfect service with a proper summons. At most, defendants complain that they had to "figure out for themselves" when a response was required, but this minimal legal research into a straightforward question does not amount to any meaningful prejudice. Also, plaintiff King has apparently made some effort to cure the defect, as he presented an amended summons to the clerk for signature and seal (*see* dkts. # 63-72), although there is no indication in the record that the new summons were actually served on defendants. Under these circumstances, the court might ordinarily be inclined to give King another opportunity to perfect service, but this brings the court to defendants' other argument: plaintiff has clearly failed to state a claim against the Litchfield defendants and Wells Fargo, making leave to perfect service futile. *See Gutch v. Fed. Republic of Germany*, 444 F. Supp. 2d 1, 4 (D.D.C. 2006), *aff'd,* 255 F. App'x 524 (D.C. Cir. 2007) ("[B]ecause granting the plaintiff leave to perfect service would be futile, the court denies the plaintiff's motion to perfect service of process."); *see also Rowe v. Shake*, 196

F.3d 778, 783 (7th Cir. 1999) ("[D]istrict courts have the power to screen complaints filed by all litigants, prisoners and non-prisoners alike, regardless of fee status.").

In this case, the only claims made by plaintiff King concern alleged violations of his constitutional rights, but the state and federal constitutions generally protect only against state action, not against the conduct of private parties like the Litchfield defendants and defendant Wells Fargo. *See Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 620 (1991) ("[T]he conduct of private parties lies beyond the Constitution's scope in most instances."); *Jacobs v. Major*, 139 Wis. 2d 492, 513, 407 N.W.2d 832, 841 (1987) ("[T]here is a presumption that a specific provision in the Declaration [of Rights of the Wisconsin Constitution] is intended to protect persons only from state action."). King does not dispute that the Litchfield defendants and Wells Fargo are private actors, nor does he allege their acts amount to state action. To the contrary, King's only claims concern his dubious, general challenge to the legality LRS, and arguably more meritorious challenge to his alleged assault at and then exclusion from an OLR proceeding, but *none* of these actions involved the Litchfield defendants and defendant Wells Fargo. Accordingly, the court will dismiss all claims against those defendants.

### B. State Defendants

#### 1. Improper Service

This leaves the arguments by the remaining defendants in the case -- the State defendants. They first argue that the court lacks personal jurisdiction over the state of Wisconsin, the Wisconsin Supreme Court, Chief Justice Roggensack, and Attorney General Brad Schimel. (State Defs.' Br. (dkt. #31) 8-9.) Specifically, they contend that

11

these four defendants were not properly served under either Federal Rule of Civil Procedure 4(e)(1) or Wis. Stat. § 801.11(1).

Again, the burden rests on the defendant to show that that service was invalid, *Bally Export Corp. v. Balicar, Ltd.*, 804 F.2d 398, 404 (7th Cir. 1986), a burden which the State defendants here have failed to carry. Indeed, other than stating perfunctorily in their brief that service was invalid, the State defendants (1) do not explain what service if any was attempted, (2) do not point to deficiencies in any affidavits of service that may have been submitted, and (3) fail to file any affidavits offering facts to support their argument. Moreover, the service rules cited do not even govern service on two of the allegedly improperly served defendants. Instead, service on States and subdivisions of the State are governed by Rule 4(j)(2) and Wis. Stat. § 801.11(3), (4), not Rule 4(e)(1) or Wis. Stat. § 801.11(1) as defendants seem to argue. Accordingly, the State defendants' argument regarding inadequate service is denied.

### 2. Eleventh Amendment

The State defendants next invoke the Eleventh Amendment. (State Defs.' Br. (dkt. #31) 10-11.) In general, the Eleventh Amendment immunizes unconsenting states from suit by private citizens in federal court. *Seminole Tribe v. Fla.*, 517 U.S. 44, 54 (1996). This immunity also extends to "arms of the state," *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 400-01 (1979), and the Seventh Circuit has indicated that state courts and their attorney disciplinary commissions are immune from suit in federal court. *See Crenshaw v. Supreme Court of Indiana*, 170 F.3d 725, 729 (7th Cir. 1999) (dismissing action against the Supreme Court of Indiana and the Disciplinary Commission

of the Supreme Court of Indiana because they were barred from suit by the Eleventh Amendment); *Johnson v. Supreme Court of Illinois*, 165 F.3d 1140, 1141 (7th Cir. 1999) (dismissing action against the Supreme Court of Illinois and the Attorney Registration and Disciplinary Commission because they were barred from suit by the Eleventh Amendment). Additionally, state officials sued for damages in their official capacities are barred from suit. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, the State of Wisconsin, the Wisconsin Supreme Court, the OLR, and the remaining state defendants sued for damages in their official capacity are immune from suit by the Eleventh Amendment, and those claims will be dismissed from this case.

3. **Standing**

Although not argued by the State defendants, the court on its own motion raises a further issue regarding plaintiff King's standing to pursue his general challenges as to the constitutionality of the LRS. *See Metallgesellschaft AG v. Sumitomo Corp. of Am.*, 325 F.3d 836, 842 (7th Cir. 2003) ("[A] district court may dismiss a case *sua sponte* for lack of Article III standing if it finds that the plaintiff has not suffered injury-in-fact."). It is a fundamental principle of standing that a plaintiff must suffer a concrete, injury-in-fact that is traceable to the challenged action in order to bring suit in federal court. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Here, the only concrete injuries asserted by King are the alleged violations of his rights related to Nora's disciplinary hearing. However, he does not allege that those events were the result of the LRS's enforcement. A plaintiff challenging a law "must be able to show, not only that the statute is invalid, but that he has sustained or is immediately in

13

danger of sustaining some direct injury as the result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally." *Frothingham v. Mellon*, 262 U.S. 447, 488-89 (1923). Because he has alleged no concrete injury *traceable* to the enforcement of the LRS, his challenge to that law as a whole is dismissed for lack of standing. Relatedly, because Attorney General Brad Schimel only appears to have been named for the purpose of challenging the constitutionality of the LRS, (*see* FAC (dkt. #2-2) ¶¶ 87-88, 173), he will be dismissed from this suit.

### 4. Official Immunity

While state officials sued in their official capacity for damages are barred from suit by the Eleventh Amendment, *see Will*, 491 U.S. at 71, that Amendment does not immunize state officials sued in their official capacity for injunctive relief. *Ex Parte Young*, 209 U.S. 123, 159-60 (1908), *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Nor does it immunize state officials sued in their individual capacity for damages. *Hafer v. Melo*, 502 U.S. 21, 23 (1991). Unfortunately for King, however, any official capacity suit is unavailable because he does not have a viable claim for injunctive relief, and the state officials sued in their individual capacity for damages are all protected by official immunity doctrines. Injunctive relief under *Ex Parte Young* is unavailable where there is "no claimed continuing violation of federal law" because there is "no occasion to issue an injunction." *Green v. Mansour*, 474 U.S. 64, 73 (1985).

In this case, plaintiff asserts in his complaint that he is seeking "declaratory and/or injunctive relief for determinations of the constitutionality of [the LRS] and for injunctive relief to prevent continuing and future injuries." (FAC (dkt. #2-2) 49.) However, as

discussed above, plaintiff has no standing to challenge the constitutionality of the LRS system as a whole, and the complaint as a whole does not allege any other *ongoing* law violation against King. As such, he may not sue the remaining individual State defendants under *Ex Parte Young.*

Finally, officials sued in their individual capacities may -- as the State defendants do here -- assert an official immunity defense. *See Ziglar v. Abbasi*, 127 S. Ct. 1843, 1866 (2017). First, there is no question that Chief Justice Roggensack may not be sued for judicial acts under the doctrine of absolute judicial immunity. *Stump v. Sparkman*, 435 U.S. 349, 359 (1978) ("A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors."). Similarly, the remaining individual State defendants -- namely, Sellen, Stieren, Kasieta, Parsons, Hannan, and Winiarski -- are entitled to quasi-judicial immunity for the judicial duties they performed as members of the OLR. *See Kissell v. Breskow*, 579 F.2d 425, 430 (7th Cir. 1978) (granting quasi-judicial immunity to state officials charged with disciplining attorneys); *Clark v. State of Washington*, 366 F.2d 678 (9th Cir. 1966) (members of admission or disciplinary committee of Bar Association granted absolute quasi-judicial immunity).

In sum, plaintiff King is left with no remaining, viable claims based on a failure to allege a state action or immunity, and the remainder of his suit will be dismissed.

ORDER

IT IS ORDERED that:

1) All pending motions to dismiss (dkts. #2-5, 22, 30) are GRANTED.

2) The Litchfield defendants' motions to strike (dkts. #46, 59) are DENIED as moot.

Entered this 27th day of April, 2020.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge